[No. 15569.  Department Two.  January 9, 1920.]

## THE STATE OF WASHINGTON, *on the Relation of W. L. Schafer, Appellant,* v. THE CITY OF SPOKANE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (354)—LICENSES (5)—USE OF STREETS—VEHICLES—LICENSE TAX. Streets, being devoted primarily to general and public, and not special or private uses, fall within the plenary legislative powers, so that a license for the operation of motor vehicles for hire is in the nature of a concession by the public, and within the discretion of the city council to grant or withhold as shall be found for the best interests of the public.

SAME (354)—USE OF STREETS—REGULATION OF JITNEYS—STATUTES. Municipal regulation of jitney busses is not precluded by Rem. Code, § 5562-1 *et seq.*, requiring persons operating passenger motor vehicles for hire in cities of the first class to obtain a license, etc., this act being intended only as general state legislation subject to additional local legislation not inconsistent therewith.

CONSTITUTIONAL LAW (113)—EQUAL PROTECTION OF THE LAWS—CLASS LEGISLATION — CARRIERS — JITNEY BUSSES — REGULATION. An ordinance regulating jitney busses in a city does not deny the equal protection of the laws or deny to persons privileges and immunities which upon the same terms belong to other persons, in violation of the state and Federal constitutions, in that its provisions are not made applicable to street cars, taxicabs, automobiles for hire, stages running to points outside the city, and others; since the business of jitney busses differs from all these and the effect of the constitutional limitations merely is to prohibit arbitrary and unreasonable classifications, and require only that the regulations operate alike upon all those similarly affected.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered September 9, 1919, dismissing an application for a writ of mandamus to compel the issuance to relator of a license to operate a jitney bus. Affirmed.

*O. C. Moore,* for appellant.

*J. M. Geraghty* and *Alex M. Winston,* for respondents.

[1]Reported in 186 Pac. 864.

TOLMAN, J. — Appellant, as relator, brought this action seeking an order of court requiring officials of the city of Spokane to issue to him a license or permit to operate a jitney bus as a common carrier of passengers for hire over a, certain fixed route in that city, described in the application therefor. The case was tried upon the pleadings and certain affidavits, from which it appears that appellant has complied with all of the statutes of the state and ordinances of the city relative to the subject-matter; is the owner of a proper motor car fitted with seating capacity for sixteen passengers; that he has duly made application to the city officials of the city of Spokane for a license permitting him to operate such motor car over a certain fixed route; that such permit was refused under the terms of ordinance No. C1916 of the city of Spokane, and in the language of the commissioner of public safety:

"The city council of the defendant city did not arbitrarily refuse to issue a license to the relator. When relator's application for a license came up for consideration by the city council it was referred to the committee of the whole council, who thereafter reported, recommending that the license be not granted. The reason for said refusal was that the said city council, after full investigation of the matter, found that the territory covered by relator's application for a license is being adequately served by local street car companies. This affiant further says that the said license is a franchise; that under the law and under the terms of the ordinance aforesaid the council has the discretion to grant or refuse licenses, and it was in the sound exercise of that discretion that the council found it for the best interests of the community and the citizens thereof that such license be not granted."

This appeal is from a judgment denying the relief sought. The ordinance in question, among other things, provides:

"Section 4.  Before such permit shall.be issued, the applicant shall file with the commissioner of public safety an application stating the make and number, if any, of the vehicle, the number of passengers for which it has interior seating capacity, the proposed route and schedule, and exhibit a state license for such vehicle.   Such application shall be referred by the commissioner of public safety to the city council, who may grant or refuse the same."   Spokane Ordinance, No. C1916.

It is first argued that the provisions of the ordinance and the action of the city council are unreasonable, arbitrary and void, and to support this contention, appellant relies upon the case of *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109, and cases from other jurisdictions in which similar questions were involved.  As we understand the law, these authorities have no application here, because they each relate to some business or vocation carried on upon private property, and not to the use of streets or other public property for the purpose of private gain.   What we conceive to be the distinction between the two classes of cases is so clearly stated in *Ex parte Dickey,* 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840, that we quote therefrom the following:

"The right of a citizen to pursue any of the ordinary vocations, on his own property and with his own means, can neither be denied nor unduly abridged by the legislature, for the preservation of such right is the principal purpose of the constitution itself.   In such cases, the limit of legislative power is regulation, and that power must be cautiously and sparingly exercised, unless the business is of such character as places it within the category of social and economic evils, such as gaming, the liquor traffic, and numerous others.   To this list may be added such useful occupations as may, under certain circumstances, become public or private nuisances, because offensive or dan-

gerous to health. All of these fall within the broad
power of prohibition or suppression, some wholly and
absolutely and others conditionally. Such pursuits as
agriculture, merchandising, manufacturing, and indus-
trial trades cannot be dealt with at will by the legis-
lature. As to them, the power of regulation is com-
paratively slight when they are conducted and carried
on upon private property and with private means.
But when a citizen claims a private right in public
property, such as a street or park, a different situation
is presented. Such properties are devoted primarily
to general and public, not special or private, uses, and
they fall within almost plenary legislative power and
control. In them, all citizens have the usual and ordi-
nary rights in an equal degree and to an equal extent.
In the regulation thereof, the legislature cannot dis-
criminate. But, as regards unusual and extraordinary
rights respecting public properties, its power or con-
trol and regulation is much more extensive. Such
rights are in the nature of concessions by the public,
wherefore the legislature may give or withhold them
at its pleasure. It may give them for some purposes
and withhold them for others, and in the case of those
given, it may, upon considerations of character, qual-
ity, and circumstances, discriminate, permitting some
things of a general class or nature to be done and re-
fusing to permit others of the same general class to
be done, or extending the privilege to some persons
and denying it to others because of differences of char-
acter or capacity.

"The right of a citizen to travel upon the highway
and transport his property thereon, in the ordinary
course of life and business, differs radically and ob-
viously from that of one who makes the highway his
place of business and uses it for private gain, in the
running of a stage coach or omnibus. The former is
the usual and ordinary right of a citizen, a common
right, a right common to all, while the latter is special,
unusual and extraordinary. As to the former, the ex-
tent of legislative power is that of regulation; but, as
to the latter, its power is broader; the right may be
wholly denied, or it may be permitted to some and

denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.''

It is next contended that the ordinance is unconstitutional because of unequal application, and that it is in the nature of class legislation. This argument is based upon § 1 of the ordinance, which excludes from its provisions street cars, taxicabs, automobiles for hire, stages running to points outside the city, and others. This subject is fully considered in *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18, where the court had under consideration a not dissimilar ordinance and after extensively reviewing the authorities and discussing the distinctions to be drawn between the several classes mentioned, held squarely against appellant's contention.

It is further argued that the ordinance is in conflict with the statute law, and therefore void. This precise question was also presented in *Allen v. Bellingham, supra,* exhaustively treated, and decided adversely to appellant's contention. The amendment since made, § 13, ch. 59, Laws of 1919, p. 113, does not in any way lessen the effect of that decision, nor can we find anything inconsistent therewith in *Seattle v. Rothweiler,* 101 Wash. 680, 172 Pac. 825. In *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C 942, the language of the *Allen* case is quoted with approval, even to that portion of it which it was there said might be *obiter,* the court saying with reference thereto:

''That language may be said to be *obiter,* but it states the correct principles as amply sustained by authority.''

Indeed, the *Allen* case answers every contention made by appellant and is absolutely controlling here. If, as appellant contends, there are features involved here which were not involved there, and if there be

language there used which was pure *obiter,* then, to cure that objection so far as we may, we now adopt and restate the language of that case and apply it to this, as follows:

"But the use to which the appellant purposes putting the streets is not their ordinary and customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they were not primarily constructed. As to such users we think the power of the municipality is plenary, in so far as this particular clause of the statute is concerned. It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely."

And to sustain that language, in addition to the authorities already referred to and cases therein cited, the following may be considered: *Lutz v. New Orleans,* 235 Fed. 978; *Craddock v. San Antonio* (Tex. Civ. App.), 198 S. W. 634; *New Orleans v. Le Blanc,* 139 La. 113, 71 South. 248; *Commonwealth v. Kingsbury,* 199 Mass. 542, 85 N. E. 848, 127 Am. St. 513, L. R. A. 1915E 264; *Fifth Avenue Coach Co. v. New York,* 221 U. S. 467; *Cummins v. Jones,* 79 Ore. 276, 155 Pac. 171.

The city was within its rights in refusing a permit to operate over a route already adequately served, and the judgment of the trial court is affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MOUNT, JJ., concur.