[No. 17041.   Department Two.   May 1, 1922.]

*In the Matter of the Application of the* SOUND TRANSIT COMPANY *for a Certificate of Public Convenience and Necessity to Operate Motor Vehicles.*[1]

CARRIERS (3)—MUNICIPAL CORPORATIONS (353) — REGULATION BY STATE COMMISSION—POWERS CONFERRED.  In view of the title to the auto transportation act, providing for "additional regulation," and section 11 [Rem. Comp. Stat., § 6397] providing that the act shall not repeal any existing act, the act was not intended to repeal existing laws or to deprive a city of the power to regulate the use of its streets, directly delegated by Const., art. 11, § 11, as part of its police powers.

CARRIERS (3)—REGULATION BY COMMISSION — POWERS — CERTIFICATES OF PUBLIC NECESSITY.  The director of public works may grant a certificate of convenience and public necessity to a motor transportation company which was in operation prior to January 15, 1921, and provide therein that it is subject to the ordinances of the city whose streets were part of the route; notwithstanding, Rem. Comp. Stat., § 6390, makes the certificate a matter of right as to companies in operation prior to such date; since such companies are not free from all regulations in view of Id., §.6389, which confers upon the director of public works power and authority to supervise and regulate auto transportation companies.

Cross-appeals from a judgment of the superior court for Thurston county, Wilson, J., entered January 3, 1922, setting aside an order and certificate issued to a carrier by the. director of public works.  Reversed on appeal of director of public works.

[1]Reported in 206 Pac. 931.

*W. R. Crawford* and *Morris B. Sachs,* for appellant
Sound Transit Company.

*The Attorney General* and *Raymond W. Clifford,
Assistant,* for cross-appellant Department of Public
Works.

*Walter F. Meier* and *Thomas J. L. Kennedy, amici
curiae.*

MAIN, J.—This is an appeal from a judgment of the
superior court of Thurston county, setting aside an
order and certificate issued by the director of public
works to the Sound Transit Company, a corporation.
From the judgment, the Sound Transit Company ap-
peals, and the director of public works prosecutes a
cross-appeal. Upon the appeal of the Sound Transit
Company is presented the question whether, when the
superior court sets aside a portion of an order and cer-
tificate entered by the director of public works which
had been taken before that court for review, the judg-
ment should set aside the entire order. The principal
question upon the cross-appeal is whether the order
entered and the certificate issued by the director of
public works were valid in their entirety.

We will first consider the question presented upon
the cross-appeal, because, if we sustain the order and
certificate as entered by the director, the question
which is presented upon the Sound Transit Company's
appeal becomes immaterial. On October 8, 1921, the
Sound Transit Company presented a petition to the de-
partment of public works asking that a certificate be
issued to it which would authorize the carrying of pas-
sengers by means of motor propelled vehicles between
Roosevelt Heights and Seattle, Washington. There-
after an order was entered and a certificate issued
which authorized that company to carry passengers

for hire between the points mentioned. Both the order and the certificate contained limitations or provisions which were in substance the same. These, as recited in the certificate, are as follows:

"This Certificate authorizes passenger service by means of motor propelled vehicles between Roosevelt Heights and Seattle, Washington, entering the city limits of Seattle at Ravenna and 65th Streets and is subject to the ordinances of the said city now in effect or which may hereafter become effective, governing the operating of motor vehicles upon the streets of said city."

Roosevelt Heights is beyond the city limits and it was desired to carry passengers from that point to the business section of the city of Seattle. The application was based upon a provision in § 4 of the Transportation by Motor Vehicle Act. Laws of 1921, ch. 111, p. 338. It is the contention of the Sound Transit Company that, under this act, since that company, prior to January 15, 1921, had been operating motor vehicles for hire, it was entitled to an order and certificate without limitation or qualification. Section 4 of the act after stating that no auto transportation company shall hereafter operate for the transportation of persons between fixed termini without first having obtained a certificate declaring that public convenience and necessity require such operation, provides:

". . . . . but a certificate shall be granted when it appears to the satisfaction of the commission that such person, firm or corporation was actually operating in good faith, over the route for which such certificate shall be sought on January 15th, 1921." [Rem. Comp. Stat., § 6390.]

It is upon this quoted provision that the Sound Transit Company relies to sustain its position. The question then is whether, by this provision of the statute,

the Sound Transit Company has a right to operate motor-propelled vehicles, since it was operating prior to January 15, 1921, without regulation or control of the director of public works and without regard to the ordinances of the city of Seattle. Under § 11, art. XI, of the constitution of this state, the city is authorized to make and enforce within its limits all local police, sanitary and other regulations which are not in conflict with general laws. It has been held that this is a direct delegation of a police power as amply within its limits as that possessed by the legislature, and that so long as the subject-matter is local and the regulation reasonable, an ordinance is valid unless inconsistent with the general laws of the state. In *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462, it was said:

"The state constitution, § 11 of article 11, provides: 'Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.' This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject-matter is local, and the regulation reasonable and consistent with the general laws."

If the Transportation by Motor Vehicle Act is not inconsistent with the power of the city to regulate the use of its streets, it does not supersede that right which the city possessed. The title to the act states that it is "An Act providing for the additional supervision and regulation of the transportation of persons and property for compensation over any public highway by motor propelled vehicle: . . . . ." Section 11, which is the last section of the act, provides:

"This act shall not repeal any of the existing law or laws, relating to motor propelled vehicles, their owners

or operators, or requiring compliance with any condition for their operation." [Rem. Comp. Stat., § 6397.]

It thus plainly appears, as indicated by the title and as provided in the body of the act, that it was not the intent of the legislature that the act should supersede other laws and regulations relating to motor propelled vehicles, but that it was to be considered as an act in addition to those already in existence. The use to which the Sound Transit Company purposed putting the streets of Seattle is not their ordinary and customary use, but a special one and one for which they were not primarily constructed. As to such a user the power of the municipality is plenary, unless it has been deprived of that power by an act of the legislature. As said in *Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18, and subsequently quoted with approval in *State ex rel. Schafer v. Spokane*, 109 Wash. 360, 186 Pac. 864, relative to the right of the use of the streets of the city by a motor propelled vehicle for hire:

"But the use to which the appellant purposes putting the streets is not their ordinary or customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed. As to such users we think the power of the municipality is plenary, in so far as this particular clause of the statute is concerned. It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely." (*Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18.)

Before we hold that the legislature has taken from the city the power to regulate and control the use of its streets, it will be necessary for the legislature to pass an act to that effect which makes its meaning plain and unequivocal. As already stated in our opinion, the legislature manifested no such intent in the passing

of the act of 1921. The city having the power after the passage of this act to regulate and control the use of its streets, the question arises as to whether the director of public works, in placing the limitation in the order and certificate, exceeded the power and jurisdiction of that department. While under § 4 of the Transportation by Motor Vehicle Act (p. 341) the Sound Transit Company was entitled to a certificate, it does not follow that it is free in the operation of its motor vehicles from any regulation or control. Section 3 of the act (p. 340) [Rem. Comp. Stat., § 6389] confers upon the director of public works, among other things, power and authority to supervise and regulate auto transportation companies. In the exercise of its power it was within the province of the director of public works to provide in the order and certificate that the motor propelled vehicles of the Sound Transit Company should be operated subject to the ordinances of the city. The fact that the Sound Transit Company was in operation prior to January 15, 1921, and was therefore entitled to a certificate as a matter of right, does not give it, under any proper construction of the law, the right to operate free from any regulation or control by making use of the streets of the city without reference to its ordinances and regulations, and without regard to any regulations of the department of public works.

Our attention is especially called to the case of the *Seattle Electric Co. v. Seattle,* 78 Wash. 203, 138 Pac. 892, as sustaining the contention of the Sound Transit Company that the Motor Vehicle Act has abrogated the power of the city to regulate its streets by ordinance so far as relates to motor propelled vehicles. In that case the question was whether the public service commission law, which conferred upon the commission the power to regulate the service which the street car

should render, took from the city such power prior to the time that the commission had acted. It was there conceded by the city that the provisions of the law conferred the power of regulation upon the commission, but it was contended that, until such time as the commission acted, the city council retained jurisdiction to regulate street railways as to the number of passengers which a car should carry and the schedule in accordance with which the cars should be operated. It was there held that the legislature had taken from the city the power to regulate and control street railways in the respect mentioned prior to the time that the commission had acted. That holding was based on the provisions of the act then under consideration. The act there involved at least differs from the present in two very material respects: There was no recital in the title that it was additional supervision and regulation, and there was no provision in the body of the act providing that it should not repeal any existing law or laws relating to the subject-matter which it covered. As already pointed out, the law here involved embodies both of these features and is indicative of a legislative intent not to supersede the power of the city to regulate and control the use of its streets. The case of *Allen v. Bellingham, supra,* and *State ex rel. Schafer v. Spokane, supra,* so far as they have any bearing, tend rather to support the position of the director of public works in the present case than that of the Sound Transit Company. In each of those cases it was held that the state had not by general law taken from the cities the power to regulate the control and use of jitney busses within their limits. In the case of *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287, it was held that telephone rates fixed by ordinance

granting the franchise could be altered or annulled by a subsequent act of the legislature, and has no controlling effect upon the disposition to be made of the present case. The question as to whether a void provision in an order or certificate by the director of public works, when taken before the superior court and set aside, avoids the entire order or only the illegal part is not necessary for the determination of the present case, as we view it, and that question will not be here discussed or determined.

The judgment will be reversed, and the cause remanded with directions to the superior court to enter a judgment affirming the order entered and sustaining the certificate issued by the department of public works.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.