[No. 17127. *En Banc.* January 16, 1923.]

# THE STATE OF WASHINGTON, *on the Relation of the Seattle & Rainier Valley Railway Company, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Walter M. French, Judge, Respondent.*[1]

CARRIERS (3)—MUNICIPAL CORPORATIONS (353)—REGULATION BY STATE COMMISSION—AUTO STAGES—POWERS CONFERRED. In view of the title to the auto transportation act "providing additional supervision" for auto transportation, and the fact that there is nothing in the act to the contrary, the act did not deprive cities of the right to regulate the use of city streets, nor confer exclusive jurisdiction over auto transportation upon the state department of public works.

MUNICIPAL CORPORATIONS (354)—STREETS—REGULATION OF JITNEYS—LICENSES—POWERS OF STATE BOARD—STATUTES—REPEAL. The auto transportation act Rem. Comp. Stat., § 6387 *et seq.*, providing additional supervision by the state department of public works over auto transportation, does not repeal Id., § 6382, making it unlawful to transport passengers for hire in any motor propelled vehicle in any city street without first obtaining a permit from the secretary of state and filing a bond.

CARRIERS (3-1)—REGULATION—ILLEGAL ACTS—INJUNCTION—POWERS OF STATE BOARD—JURISDICTION OF COURTS. Rem. Comp. Stat., § 6393 (of the auto transportation act) giving the state department power to hear all complaints filed with it, to be reviewed by the courts, does not confer exclusive jurisdiction over the rights of parties after it had issued a permit; but any public service company specially damaged may maintain an action for an injunction to prevent the violation of city ordinances or laws or the orders of the department of public works relating to the transportation of passengers in a city by motor propelled vehicles.

MANDAMUS (20)—TO COURTS—ERRONEOUS DISMISSAL FOR WANT OF JURISDICTION. Mandamus lies to compel the superior court to proceed with a case which it erroneously dismissed on the mistaken belief that it had no jurisdiction.

Application filed in the supreme court March 10, 1922, for a writ of mandamus to compel the superior

[1]Reported in 212 Pac. 259.

court for King county, French, J., to proceed with a cause. Granted.

*Donworth, Todd & Higgins,* for relator.

*W. R. Crawford,* for respondent.

MACKINTOSH, J.—The relator, by this original proceeding in mandamus, asks this court to order the superior court of King county to take jurisdiction of, proceed with, hear and determine an action instituted by the relator against Knowles and others, wherein the defendants are sought to be enjoined from operating jitneys on certain streets in the city of Seattle.

The complaint in the superior court alleged that the plaintiff in that action, the relator here, was the owner and operator of a street car line upon certain streets in the city of Seattle, under a franchise, and that the defendants were operating for-hire automobiles upon the same streets, in interference with the plaintiff's cars, and that such operation by the defendants was in violation of an ordinance of the city of Seattle which required them to secure a license; that the operation was also in violation of the provisions of chapter 57, Laws of 1915, p. 227 (Rem. Comp. Stat., § 6382), in that the defendants had not obtained from the director of licenses of the state the permit required by that chapter; that the defendants had obtained from the department of public works a certificate of public convenience and necessity, under the provisions of chapter 111, Laws of 1921, p. 338 (Rem. Comp. Stat., § 6387), by which they were authorized to operate an automobile stage between the cities of Seattle and Renton, and that they had filed a schedule for four round trips a day for that portion of the route within the city of Seattle; that, in violation of the permit issued by the department of public works, the defendants were making

twenty-five round trips a day within the city limits of Seattle. The complaint further alleged that the action of the defendants constituted a nuisance which was specially injurious to the plaintiff, and asked for an injunction and for damages.

Objection was made that the court had no jurisdiction of the subject-matter of the action, for the reason that jurisdiction was vested in the department of public works. This objection was sustained and this action in mandamus followed.

Taking up first the question of whether plaintiff had the right to maintain its action, assuming for the moment that the matter was not entirely within the jurisdiction of the board of public works, we find that this court has held in *Puget Sound Traction, L. & P. Co. v. Grassmeyer,* 102 Wash. 482, 173 Pac. 504, L. R.. A. 1918F 469, that such an action would lie when brought by a street railway company whose business was interfered with by the operation of jitney busses in violation of city ordinances, and that it has also been held by this court that operators of jitneys must comply with the ordinances requiring them to secure a license: *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18; *Puget Sound Traction, L. & P. Co. v. Grassmeyer, supra; State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864; *McGlothern v. Seattle,* 116 Wash. 331, 199. Pac. 457. Laws of 1921, p. 338, ch. 111, does not purport to do more than, as is stated in the title of the act, "providing for the additional supervision and regulation of the transportation of persons and property for compensation over any public highway by motor propelled vehicles." There is nothing in the act which purports, nor can any intention be found in the act, to interfere with the right of the city to make ordinances providing for the regulation of the use of its streets.

As we said in *In re Sound Transit Co.*, 119 Wash. 684, 206 Pac. 931:

"Before we hold that the legislature has taken from the city the power to regulate and control the use of its streets, it will be necessary for the legislature to pass an act to that effect which makes its meaning plain and unequivocal. As already stated in our opinion, the legislature manifested no such intent in the passing of the act of 1921. The city having the power after the passage of this act to regulate and control the use of its streets,    .    .    ."

We had already held that the public service commission act, which resembles in many respects chapter 111, Laws of 1921, p. 338, did not interfere with the city in the granting of franchises, except as to rates and service. *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D 78, L. R. A. 1915C 287; *State ex rel. Tacoma R. & P. Co. v. Public Service Commission*, 101 Wash. 601, 172 Pac. 890; *Seattle v. Puget Sound Traction, L. & P. Co.*, 103 Wash. 41, 174 Pac. 464; *State ex rel. Seattle v. Seattle & Rainier Valley R. Co.*, 113 Wash. 684, 194 Pac. 820.

It is next argued that chapter 111, Laws of 1921, p. 338, in effect repeals chapter 57, Laws of 1915, *supra*, which latter chapter provides that persons operating for-hire cars in a city of the first class must secure a license therefor. The answer to this contention is the same as that which was made by the court to the claim that ch. 111 deprived cities of the right to regulate such cars by ordinance. Chapter 111 does not repeal or purport to repeal ch. 57, Laws of 1915, *supra*, and the language which we have quoted from the case of *In re Sound Transit Co., supra,* is applicable to the immediate question.

The complaint in the superior court therefore alleged sufficient to give the plaintiff in that action the right to

maintain it, so far as it alleged that the defendants were operating to the plaintiff's damage and in violation of the requirements of the city ordinances and of the Laws of 1915, *supra*.

There remains, therefore, but the one question as to whether by reason of the fact that the defendants had a certificate of necessity and convenience from the board of public works and were alleged in the complaint to be violating that certificate, the superior court was without jurisdiction of the entire matter, and it was one to be heard exclusively by the department of public works. In the first place, there is nothing in ch. 111, Laws of 1921, p. 338, under which this certificate was obtained, that gives the department of public works authority to hear a matter of this sort. It is only by reading into the act of 1921 the provisions of the public service commission law that any such authority can be suggested. Laws of 1921, p. 342, § 6 (Rem. Comp. Stat., § 6393), provides as follows:

"In all respects in which the Commission has power and authority under this act, applications and complaints may be made and filed with it, process issued, hearings held, opinions, orders and decisions made and filed, . . . and petitions for writs of review, to the superior court, filed therewith, appeals or mandate filed with the supreme court of this state, considered and disposed of by said courts in the manner, under the conditions and subject to the limitations and with the effect specified in the Public Service Commission law of this state."

But, as we read that section, it does not cover the situation presented by the facts in this case, for if the complaint had been made with the department of public works, that department had no authority to grant relief sufficient to meet the situation. The complaint alleges that the department had already ordered the de-

fendants to cease their additional operations within the city of Seattle and to furnish only the service which they were empowered to give under their original schedule as filed. The department, as a matter of fact, had already done everything that it was empowered to do by the filing of a complaint, the defendants, it is alleged, continuing to operate not only in violation of the city ordinances and Laws of 1915, *supra*, but also of the direct order of the department itself. Section 10422, Rem. Comp. Stat., being a portion of the public service commission act which provides that a complaint can be made before the department of public works, is claimed by the defendants, as is also § 10442, Rem. Comp. Stat., to give the exclusive jurisdiction to the department, the latter section providing that the department may direct the Attorney General of the state to commence an action to enjoin the continuance of the illegal acts. In *Johnson v. Pacific Power & Light Co.*, 90 Wash. 492, 156 Pac. 530, the court held that the user of water could maintain an action against a water company which had shut off his water, and that the department of public works (then the public service commission) had no jurisdiction of such action. Furthermore, even assuming that the department of public works had jurisdiction, the relief which the department could afford would be inadequate, as it has no power and no inherent authority to issue an injunction or to adjudicate property rights such as are involved in the plaintiff's action. *Sylvania Home Tel. Co. v. Public Utilities Commission*, 97 Ohio St. 202, 119 N. E. 205; *Paulos v. Radebaugh*, Utah, P. U. R. 1921D 377.

Nor even if the department requested the Attorney General to institute an injunction proceeding would the plaintiff be deprived of its right of action. In the Ohio case just cited above, the court said:

''Under favor of the provisions of this section the commission may, when a public utility has committed an act in violation of law, apply to the Attorney General, who shall commence and prosecute a proceeding by injunction against such utility. And again, we know of no reason why a telephone company itself whose territory has been unlawfully invaded cannot apply to a court for an injunction and ask that the invading company be enjoined from operating in that locality.''

The supreme court of Utah, in *Public Utilities Commission v. Garviloch*, 54 Utah 406, 181 Pac. 272 said, in reference to this same question:

''The certificate, therefore, not only confers authority to operate the stage line, but it necessarily also affords him protection against anyone who unlawfully interferes with the right thereby conferred.     .     .
Comp. Laws, Utah 1917, § 4840, provides for actions for damages by all persons who may be injured in any respect by the acts or omissions of any public utility. This necessarily includes damages for the unlawful interference by one public utility with the rights and franchises of another public utility. That proposition is clearly illustrated in *Puget Sound, etc., Co. v. Grassmeyer, supra.*''

And again:

''We have arrived at the foregoing conclusion with less reluctance for two reasons:     .     .     .     (2) for the reason that if Chandler's business is in fact unlawfully interfered with by the defendant, as stated by the Attorney General at the hearing, Chandler may, as before stated, institute an action on his own behalf, and recover such damages as he may prove, or he may obtain such other relief as may be just and equitable in the premises.''

See, also, *United Traction Co. v. Smith*, 115 Misc. Rep. 73, 187 N. Y. Supp. 377; *People ex rel. Weatherwax v. Watt*, 115 Misc. Rep. 120, 188 N. Y. Supp. 559.

Even though the department of public works may

• have jurisdiction in addition to its exclusive jurisdiction to determine rates and service, that additional jurisdiction is not exclusive but is concurrent with the power of the court of equity. *Waukesha Gas & Electric Co. v. Waukesha Motor Co.*, 175 Wis. 420, 184 N. W. 702, and *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572, where numerous cases from this court are cited.

To summarize our conclusion: we hold that ch. 111, Laws of 1921, p. 338, does not deprive the cities of the right to regulate the use of their streets, nor does that act repeal ch. 57, Laws of 1915, p. 227, and that the street railway company, where it is specially damaged, has a right by injunction to prevent the violation of ordinances and laws and of an order of the department of public works.

The only remaining question is whether this court can entertain an original application for writ of mandamus where the superior court has decided incorrectly that it had no jurisdiction of the subject-matter of the action. In *State ex rel. Martin v. Superior Court, supra*, this question was finally resolved by this court issuing such writs, and it must follow that the writ must issue, directing the respondents to take jurisdiction of, proceed with, and hear and determine the action instituted by the relator against Knowles and others.

All concur.